# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

v.

**RUBEN O'NEILL HERNANDEZ,**

**Defendant.**

**Crim. No. 18-718 (ADC)**

## OPINION AND ORDER[1]

Before the Court is defendant Rúben O'Neill-Hernández's ("defendant") motion to suppress. **ECF No. 19**. The government filed a response in opposition to the motion. **ECF No 21**. The Court held an evidentiary hearing on June 17, 2019, during which time Police of Puerto Rico ("PRPD") Agent Guillermo Millán ("Millán") testified. **ECF No. 28**. For the following reasons, the motion to suppress is **DENIED**. **ECF No. 19**.

## I. BACKGROUND

Defendant is charged with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and possession with intent to distribute a mixture or substance containing a detectable amount of marijuana in violation of *id*. § 841(a)(1), (b)(1)(D). **ECF No. 1.**

---

[1] The record reflects that on August 22, 2019, defendant entered a guilty plea. This Opinion and Order is issued consistent with the determination made from the bench at the conclusion of the suppression hearing.

Defendant's charges arise out of a traffic stop that occurred on November 12, 2018, around 8:50 p.m., near the intersection of Plaza Las Americas and the Hiram Bithorn Stadium in San Juan, Puerto Rico, on November 12, 2018. **ECF No. 28**. That evening, defendant was driving a black Mazda car with one person seated in the front passenger seat. The vehicle stopped in the right lane at a red traffic light near the entrance of the Hiram Bithorn Stadium. A police cruiser driven by Agent Millán, who was accompanied by his partner PRPD Agent Dávila,[2] approached the red light in the center lane and stopped at a diagonal angle behind defendant's vehicle. *Id.* When the traffic light turned green, the PRPD vehicle signaled defendant to pull over. *Id.* Defendant complied. Defendant and Agent Millán exited their vehicles. *Id.* The agent explained to defendant he had been stopped for a "suspected" expired vehicle registration sticker ("marbete").[3] Defendant conceded that the marbete on his vehicle was expired and explained that he had renewed his registration but failed to affix the renewed marbete. As proof, he retrieved the valid sticker from inside the vehicle. Having noticed the smell of marijuana as he neared the Mazda, Agent Millán requested defendant's consent to search the vehicle. *Id.* Defendant consented. Inside the vehicle, the officers found controlled substances, a firearm, ammunition, and drug paraphernalia. **ECF Nos. 19** at 2–3; **21** at 2. Upon receiving his Miranda rights, defendant made several admissions and signed a written confession. **ECF No. 21** at 2.

---

[2] Agent Dávila's full name was not provided on the record.
[3] A "marbete," is the colloquial word for the credit-card sized registration sticker placed on lower right hand-corner of a vehicle's windshield. The registration sticker is valid for one year and changes design and colors each year. The twelve months of the calendar year are arranged on the sticker in the same pattern each year. The months from January through June are on one side of the sticker while the following six months are on the opposite side. A hole punch is placed through the month of expiration.

Defendant now argues that the PRPD agents lacked reasonable suspicion to pull him over, manufacturing a pretext for his stop, in violation of his Fourth Amendment Rights. **ECF No. 19** at 3**.** Specifically, defendant challenges the PRPD agents' ability view his expired marbete under the circumstances—at night, at an area with poor lighting, from a rear-view diagonal angle, through the Mazda's tinted window, and past the passenger's silhouette. *Id.* at 6. The Court held an evidentiary hearing on the matter on June 17, 2019. **ECF No. 28**.

## II. LEGAL STANDARD

Under the Fourth Amendment, an officer stopping a vehicle "constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Nieves*, 256 F. Supp. 3d 133, 136 (D.P.R. June 22, 2017) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). The duration of a traffic stop should "last no longer than is necessary to effectuate" the purpose of the traffic stop. *Rodríguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citation and internal quotation marks omitted). A traffic stop is within the boundaries of the Fourth Amendment if "an officer has a reasonable suspicion of unlawful conduct involving a motor vehicle or its operation." *United States v. Jenkins*, 680 F.3d 101, 105 (1st Cir. 2012) (citation omitted). And, "any action undertaken with respect to the stop must be reasonably related in scope to the stop itself unless the police have a basis for expanding their investigation." *United States v. Dion*, 859 F.3d 114, 124 (1st Cir. 2017) (citation and internal quotation marks omitted). Reasonableness "requires a practical, common sense determination," that amounts to less suspicion "than probable cause and more than a naked hunch." *Id*. (citation and internal quotation marks omitted). "[T]his determination

. . . entails a measurable degree of deference to the perceptions of experienced law enforcement officers." *Id.* (citation and internal quotation marks omitted) (omission in original).

Although traffic stops should remain within the scope of time to resolve the particular traffic violation at issue, an officer "may extend a stop beyond the scope of what was originally permissible with the driver's consent, or if something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *Nieves*, 256 F. Supp. 3d at 136 (citations omitted). And, "when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." *United States v. Staula,* 80 F.3d 596, 602 (1st Cir. 1996).

Moreover, an officer may conduct a warrantless search of a vehicle with the driver's consent. *United States v. Forbes*, 181 F.3d 1, 4–5 (1st Cir. 1999). To determine whether consent is voluntary, the court considers the totality of the circumstances, weighing the consenting individual's "age, education, experience, intelligence, and knowledge of the right to withhold consent." *Id*. at 5 (citation and internal quotation marks omitted).

### III.    DISCUSSION

Defendant's argument focuses on the credibility of Agent Millán's observations. Defendant reasons that, given the circumstances, it was impossible for Agent Millán to have seen the expired marbete on his windshield.

Agent Millán testified that he is currently assigned to the Traffic Bureau Bayamón Highway Patrol and was formerly assigned to the San Juan Highway Patrol Division. **ECF No. 28**. He estimated that he visually inspects between 100–150 registration stickers daily and has inspected over a thousand throughout his five-year PRPD career.

Agent Millán recalled that on the evening in question, he was conducting general traffic patrol duties with his partner in the area including Roosevelt Avenue. Agent Millán testified that he observed a black Mazda (Exhibits 1 and 2) stopped in the right lane at a red light at the intersection near the Hiram Bithorn Stadium and Plaza Las Americas Shopping Center. He described the intersection's traffic light as "quite bright" and he recalled pole lighting in the area as well as a large, electronic billboard at the right of the intersection that provided substantial lighting. (Exhibits 3, 4 and 5.) Agent Millán approached the intersection from the center lane. Besides the black Mazda, he recalled another vehicle stopped at the intersection in the "turn only" lane.

Agent Millán explained that he purposefully positioned his police cruiser slightly behind the black Mazda at a diagonal angle, because it allowed him to see into the Mazda and observe any seatbelt or registration violations. He testified that within the car there were two people, a driver and front-seat passenger. He recalled that the Mazda's windows were tinted but that the rear windows were partially rolled down. From this perspective, he testified he was able to see that the vehicle's marbete had expired several months prior. He noted that because it was November at the time of the stop, the Mazda's marbete would be valid only if it were perforated

in the lower left portion (from Agent Millan's viewpoint) of the sticker in the areas indicating a November or December expiration date. He explained that the November and December entries on all marbetes are located on the lower part of the sticker. He testified that he observed a perforation at the top left of the marbete and that the Mazda's marbete was green in color, while the 2019 marbete is beige and red. From this observation and his experience in inspecting hundreds of marbetes a day, he suspected the Mazda's marbete expired around July 2018.

Once the traffic light turned green, Agent Millán notified his fellow agent he was to conduct a traffic stop because of an expired registration sticker. Agent Millán moved behind the black car and signaled with the patrol lights and siren for it to pull over. Agent Millán testified that as he exited the patrol car and approached the Mazda, he could smell marijuana. He indicated that defendant exited the Mazda and approached him, at which time Agent Millán ordered defendant to stop.

Officer Dávila approached the defendant's vehicle and confirmed the marbete expired at the end of July 2018. When Agent Millán asked defendant about the expired marbete, defendant requested Rivera, his passenger, hand him the renewed registration sticker stored in the front compartment of the vehicle. At the time, Rivera had lower the right door (passenger's.) Agent Millán noted that defendant seemed nervous and was sweating.

The Court ruled from the bench that Agent Millán's testimony was credible. Agent Millán has vast experience as a PRPD officer and, more specifically, extensive experience with registration violations. Throughout the evidentiary hearing, Agent Millán remained consistent

and clear both during direct and cross examinations. Additionally, the government admitted into evidence several photographs of the intersection at issue. **ECF No. 28, Exhibits 3–5**. One of the photos, taken at night, depicted the light emitted from the electronic billboard, traffic light, and pole lighting. *Id*. at **Exhibit 5**. The Court found that the electronic billboard projected a large swath of white light across three lanes of traffic, including the two lanes occupied by defendant and Agent Millán. Thus, although it was 8:50 p.m. at the time of the traffic stop, the electronic billboard alongside the traffic light projected enough light to render credible Agent Millán's testimony that he observed the expired marbete prior to initiating the traffic stop.

## IV. CONCLUSION

The traffic stop was therefore supported by reasonable suspicion of a traffic violation, which was corroborated after the stop. The subsequent warrantless search of defendant's vehicle was supported by Agent Millán's olfactory observation of marijuana emanating from the vehicle and authorized by defendant's consent. The Court **DENIES** defendant's motion to suppress, **ECF No. 19**.

**IT IS SO ORDERED**.

At San Juan, Puerto Rico, on this 19th day of February, 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**